**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

WILLIAM N. LUCY,                          :
AIS 204880,
                                          :

      Petitioner,                        :

vs.                                       :          CA 18-0218-WS-MU

                                          :
WARDEN MARY COOKS,
                                          :

      Respondent.

## <u>REPORT AND RECOMMENDATION</u>

William N. Lucy, a state prisoner presently in the custody of the respondent, has

petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

Petitioner challenges the validity of his January 6, 2015 conviction in the Circuit Court of

Mobile County, Alabama for offering a false instrument for recording against a public

servant in violation of Alabama Code § 13A-9-12(c). On January 26, 2015, Lucy was

sentenced to a thirty-year term of imprisonment in accordance with Alabama's Habitual

Felony Offender Statute, Ala.Code § 13A-5-9. The Alabama Court of Criminal Appeals

affirmed Lucy's conviction and sentence by unpublished memorandum opinion issued

on February 5, 2016. *See Lucy v. State,* 225 So.3d 129 (Ala.Crim.App. 2016) (table).

Lucy's application for rehearing was denied on March 11, 2016, *id.*, and his petition to

the Alabama Supreme Court for writ of certiorari was ultimately stricken due to

Petitioner's failure to comply with Rule 39(c)(2) of the Alabama Rules of Appellate

Procedure. Lucy filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama

collaterally attacking his conviction and sentence on October 26, 2016. (*Compare* Doc.

20, Exhibit J, March 21, 2017 ORDER *with id.,* Exhibit M, at 2). The trial court summarily

denied Lucy's collateral petition without an evidentiary hearing. (*See id.*, Exhibit J,

March 21, 2017 ORDER). The Alabama Court of Criminal Appeals affirmed the trial

court's judgment by unpublished memorandum decision issued on October 6, 2017.

(*Id.*, Exhibit M). Petitioner's application for rehearing was overruled on October 27, 2017

(*id.*, Exhibit O) and the certificate of final judgment issued on November 15, 2017 (*id.*,

Exhibit P), Lucy filing no petition for writ of certiorari (*compare id. with id.* at Exhibit O).

In his petition before this Court, filed May 30, 2018 (*see* Doc. 12, at 12),[1] Lucy

raises the following issues which he claims entitle him to federal habeas corpus relief:

(1) the trial judge should have recused himself because of a disqualifying conflict of

interest;[2] (2) he was never arraigned by the trial court on the underlying charge; (3) he

was denied his right to call witnesses on his behalf;[3] and (4) he was not allowed to

submit evidence on his behalf.[4] (Doc. 12, at 6-8).[5] Respondent contends that this Court

---

[1]      Lucy initially (but improperly) filed a habeas corpus petition in the Northern District of Alabama but once his case was transferred to this Court (*see* Doc. 7), Petitioner was ordered to file his complaint on this Court's form for a § 2254 case (*see* Doc. 9) and he complied with this directive on May 30, 2018 (Doc. 12, at 12).

[2]      According to Lucy, the trial judge should have recused himself upon learning that Petitioner had named him as a defendant in a federal civil rights lawsuit pending in this Court. (*See* Doc. 12, at 6).

[3]      Petitioner contends that the trial court improperly quashed the subpoenas for 14 witnesses he wished to give testimony. (Doc. 12, at 8).

[4]      Lucy observes that the evidence he submitted was labeled as exhibits but the jury was not allowed to view or consider this evidence. (Doc. 12, at 8).

[5]      The undersigned parenthetically notes that when Petitioner initially filed a habeas petition in the Northern District of Alabama, he concurrently filed a petition for preliminary injunction against four respondents—Lt. Angela Norman, the Alabama Department of Corrections, Warden William Streeter, and Captain Willie Knight (Doc. 1, at 23-24)—in a case in (Continued)

which he named the State of Alabama as the respondent (*id.* at 3). In this petition, Lucy sought to enjoin Norman, Streeter, Knight and the ALDOC "from blocking [his] access to Court and/or causing  impediment to prohibit the completion of his 28 U.S.C. 2254 habeas corpus for post-conviction relief." (Doc. 1, at 23; *see also id.* ("Petitioner's legal work and supporting documents has been confiscated and this petitioner has received a disciplinary for his efforts to complete the enclosed 28 U.S.C. 2254.")).

> Granting or denying a temporary restraining order or preliminary injunction rests in the discretion of the district court. *See Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd.,* 112 F.3d 1125, 1126 (11th Cir. 1997) . . . . The district court must exercise its discretion in light of whether:
>
> > 1. There is a substantial likelihood that Petitioner will prevail on the merits;
> >
> > 2. There exists a substantial threat that Petitioner will suffer irreparable injury if the injunction is not granted;
> >
> > 3. The threatened injury to Petitioner outweighs the threatened harm the injunction will do to Defendants; and
> >
> > 4.  The granting of the preliminary injunction will not disturb the public interest.
>
> *CBS Broadcasting, Inc. v. Echostar Communications Corp.,* 265 F.3d 1193, 1200 (11th Cir. 2001) . . . . "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Service v. Bethesda Memorial Hosp.,* 887 F.2d 1535, 1537 (11th Cir. 1989) [].
>
> Further, the purpose of preliminary injunctive relief is to preserve the status quo between the parties and to prevent irreparable injury until the merits of the lawsuit itself can be reviewed. . . . This necessitates that the relief sought in the motion be closely related to the conduct complained of in the actual complaint or petition. . . . Also, the persons from whom the injunctive relief is sought must be parties to the underlying action. . . .

*Rogers v. Buss,* 2011 WL 2448351, *1-2 (N.D. Fla. May 4, 2011), *report and recommendation adopted,* 2011 WL 2448348 (N.D. Fla. June 20, 2011).

Here, Lucy's petition does not discuss, much less establish, the prerequisites for obtaining injunctive relief in this case. More importantly, after this Court instructed Lucy to file his habeas corpus petition anew on this Court's form (*see* Doc. 9) the petition Lucy filed against Warden Mary Cooks (Doc. 12) contains no accompanying petition for a preliminary injunction (*see id.*). And, finally, since this discussion comes within the context of a report and recommendation addressing the claims Lucy raises in the complaint form provided by this Court (*see id.*) and those claims are decided adversely to Lucy, there is no substantial likelihood that
(Continued)

is procedurally barred from reaching the merits of each of Lucy's four asserted claims and that, besides, his second, third and fourth claims were denied on the merits and Lucy cannot show that the state court's decision was contrary to established federal law as set forth by the Supreme Court or that such decision constitutes an unreasonable application of the law to the facts. (*See* Doc. 20, at 2-3 & 11-19.)

This cause is before the Court on the petition (Doc. 12), Respondent's answer with attachments (*see* Doc. 20), Petitioner's response (Doc. 27) to the undersigned's August 29, 2018 show cause order (Doc. 21), and Lucy's rebuttal to the State's answer (Doc. 28). A full, thorough review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required. *Compare Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) *with Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011). It is now herein

---

Petitioner will prevail on the merits. Accordingly, the recommendation is made that Petitioner's conclusory petition for preliminary injunction be denied.

**RECOMMENDED** that the Court find that it is procedurally barred from reaching the merits of the claims raised by Lucy (Doc. 12).

**FACTUAL BACKGROUND**

On June 21, 2013, Lucy was charged by indictment with offering a false instrument for recording against a public servant in violation of Alabama Code § 13A-9-12(c). (Doc. 20, Exhibit A, Part I, at 35 ("The GRAND JURY of said County charge, that, before the finding of this indictment **William N. Lucy** whose name is to the Grand Jury otherwise unknown than as stated, **did on or about December 19, 2012 offer a false instrument for recording in the Office of the Judge of Probate of Mobile County against a public servant, to wit:** *a written instrument and associated attachments recorded in Book 6968, page 1138 and Book 6968, page 1143, in the office of the Judge of Probate of Mobile County, which instrument and attachments falsely purport to represent a lien, writ of seizure and writ of execution on non-existent judgment in the amount of $42,000,000, against Jojo Schwarzauer, Clerk of the Circuit Court of Mobile County who is a public servant,* **knowing that said instrument relating to or affecting real or personal property, or an interest therein, or directly affecting contractual relationships of said public servant contains a material false statement or materially false information,** *to wit, the existence of a judgment or instrument evidencing an indebtedness against said public servant in the amount of $42,000,000,* **and with the intent to defraud, intimidate or harass the said public servant, or to impede the public servant in the performance of her duties, presented or offered said instrument to a public office or public employee,** *to wit, the Office of the Judge of Probate of Mobile County,* **with the knowledge**

5

**that it will be registered, filed or recorded or become part of the records of that public office or public employee, in violation of 13A-9-12(c) of the Code of Alabama,** against the peace and dignity of the State of Alabama[.]")).

The trial record is undisputed that the written instrument(s) offered for recording in the Mobile County Probate Court against Mobile County Circuit Clerk Jo Jo Schwarzauer consisted of a Notice of First and Final Warning (*see* Doc. 20, Exhibit A, Part 2, T.T. 138 & State's Exhibit 1) and a Commercial Lien (*see id.* at 138-29 & State's Exhibit 2). Both of these instruments were recorded in the Mobile County Probate Court on December 19, 2012. (T.T. 139; *see also id.* at 141 (testimony that Exhibit 1 was recorded in Probate Book 6968, Page 1138, consisting of 5 pages and Exhibit 2 was recorded in Book 6968 beginning at page 1143, consisting of 6 pages, in the Mobile County Probate Court)). The face of Exhibit 1, the Notice of First and Final Warning, references that it is a Commercial Lien addressed to Jo Jo Schwarzauer from William N. Lucy regarding a breach of contract and breach of oath of office (*id.*), and reads as follows:

> Ms. Schwarzauer, please be advised since you have refused to uphold the laws of the State pf Alabama and its Constitution as well as the Constitution of these United States of America at Amendments 5 and 14 dealing with due process of law guaranteed to all citizens, you, Ms. Schwarzauer, has failed to uphold the oath you took when you entered the office of circuit clerk[,"] to uphold and defend the Constitution and laws of the State of Alabama[."] This was a contract with the people, Ms. Schwarzauer. I am one of those peoples. [] Ms. Schwarzauer, you breached this contract to uphold the law when you refused to enter judgment in favor of William N. Lucy, counter plaintiff in civil action CV11-0852 as prescribed by Alabama law at rule number 55(b)(1) Alabama Rules of Civil Procedure. Pursuant to this law at Rule 55(b)(1) you, Ms. Schwarzauer, is required to enter judgment in favor [of] counter plaintiff William N. Lucy in civil action CV11-0852 for the sum of forty-two million dollars demanded in counter plaintiff's complaint. Ms. Schwarzauer,

unless you enter judgment in favor of counter plaintiff William N. Lucy in civil action CV11-0852 or show cause why you cannot in objection to counter plaintiff's affidavit hereto attached[,] Ms. Schwarzauer, you have thirty days from the date of this notice to enter judgment in favor of the counter plaintiff or show legal reasons why you cannot or I will enter a commercial lien on all of your property. This include[s] []real estate, cars, bank accounts, stocks, bonds, et[c.] and anything of value to recover the forty-two million dollars I'm due but refuses to uphold the law and enter judgment in favor of counter plaintiff in civil action number CV11-0852. Your immediate attention to this matter will be to your benefit.

(T.T. 141-43). This First and Final Warning was dated and signed by Lucy on October 22, 2012 (*id.* at 143), as was the attached Statement of Truth Affidavit (*id.* at 144),[6] and sent to Jo Jo Schwarzauer by certified mail, along with a copy of Schwarzauer's Oath of Office (*id.* at 144).[7]

The primary documents comprising State's Exhibit 1 were executed by Lucy and sent to Schwarzauer on October 22, 2012, but were not recorded in the Mobile County

---

[6]     The Statement of Truth Affidavit executed by Lucy on October 22, 2012, reads as follows:

> On or about December 7, 2011[, t]he Circuit Clerk (Ms. Jo Jo Schwarzauer) upon the request of William N. Lucy, counter plaintiff in civil action CV11-0852[,] enter[ed] default in the record against the [counter] defendants in the aforementioned case[,] although the request from counter plaintiff, William Lucy, included [a] request[] for judgment in favor of counter plaintiff, William N. Lucy, as prescribed by Alabama law at Rule 55(b)(1) of Alabama Rules of Civil Procedure[,] which states in pertinent part[: "]if the sum is a sum certain or a sum that can be made certain[] by computation, the clerk must enter judgment in favor of [] plaintiff["]. In this case, counter plaintiff, William N. Lucy, [states] the sum in this case can be made certain by computation. Therefore, counter plaintiff, William N. Lucy, is entitled to judgment in this instant case in his favor as a matter of law. The Mobile County Circuit Clerk, Jo Jo Schwarzauer, refuses to obey the law and the Constitution she swore to obey and defend.

(*Id.* at 143-44.)

[7]     This Oath of Office was signed and sworn to by Schwarzauer on December 19, 2006 before Presiding Judge of the 13th Judicial Circuit Charles Graddick (*id.* at 145) and while the actual contents of the oath were read into the record of the trial court proceedings (*id.* at 144-45) those contents are not replicated herein.

Probate Court, along with the documents making up State's Exhibit 2, until December 19, 2012 (*see id.* at 139), almost sixty (60) days later.[8] State's Exhibit 2 was the Commercial Lien recorded by Lucy in the Probate Court of Mobile County on December 19, 2012 and consisted of four attachments, namely, a Notice of Default [and] Affidavit of Notice of Amount Due, a Notice of Amount Due and Right to Cure, a Writ of Execution, and a Writ of Seizure, all of which were executed by Lucy on December 17, 2012. (*See* T.T. 145-48). The Notice of Default advised Schwarzauer that she was "in default of an opportunity to respond to the commercial affidavit" sent to her "on October 23, 2012 by certified mail[,]" same giving her the opportunity "to rebut the claims" made against her, and, therefore, since she "failed to answer or give any defense to said affidavit[, a] default judgment" was "being recorded" against her. (*See* T.T. 145). The Notice of Amount Due and Right to Cure advised Schwarzauer that the damages caused by her injury to Lucy "by defalcation, dereliction of duty, default and unauthorized [']refusal to record[']" was the "sizeable amount [of] forty-two million dollars" but that the Mobile County Circuit Court Clerk had the "right to cure this by entering judgment in favor of affiant, William N. Lucy, in the amount of forty-two million dollars ($42,000,000.00) upon receipt of this notice." (*Id.* at 147).[9] The Writ of Execution reads, as follows: "This writ is to inform you, Ms. Schwarzauer, that upon notice of this judgment[,] execution of same is

---

[8]    Obviously, Lucy's First and Final Warning to Schwarzauer garnered no response from Mobile County's Circuit Court Clerk within the 30 days set forth in the Statement of Truth Affidavit. (*See* T.T. 145-48).

[9]    This latter reference is, of course, to Lucy's insistence that Schwarzauer was required to enter a $42,000,000.00 default judgment in his favor against the counter-defendants in CV-2011-0852.

hereby granted and any and all means available can be used by affiant, William N. Lucy, to collect the same." (*Id.* at 147-48.) And finally, the Writ of Seizure notified Schwarzauer that Lucy had the right (and could use any means at his disposal) to collect the $42,000,000.00 "judgment due him in cross complaint CV 11-0852[,]" including the seizure of any and all things of value held by or owned by Schwarzauer—whether, community or non-community property, or real or personal property (including, all bank accounts, automobiles, jewelry, furnishings, certificates of deposit, stocks, bonds, etc.). (*See id.* at 148.)

It is clear based on a reading of all of the foregoing documents that Lucy believed on December 19, 2012, long before then, and to this day that though Schwarzauer entered default against all counter-defendants in CV-2011-000852 on December 7, 2011 (*compare* T.T. 164 *with* State's Exhibits 3-6), she was required by the provisions of Rule 55(b)(1) to enter a default judgment against those counter-defendants in the amount of $42,000,000.00 as set forth in his counterclaim (*see, e.g.,* T.T. 147) and that her failure to enter this default judgment allowed him to assert default against the Circuit Clerk in that same amount and recover any of her assets "to collect the judgment due him in cross complaint CV11-0852 of forty-two million dollars[.]" (*Id.* at 148). This remained Lucy's position at trial (*see, e.g.,* T.T. 206-07), despite the October 15, 2012 Order of Circuit Judge Robert H. Smith setting aside the entries of default and holding them for naught and dismissing Lucy's counterclaim against Steven J. Cox with prejudice by granting Cox's motion for summary judgment on the basis that the matter sought to be litigated by Lucy in his counterclaim filed in the ejectment action, CV 11-0852, that is, the piece of property at 413 Chin Street in Mobile, Alabama (and, as well, another piece of

property at 2061 Tucker Street), had already been adjudicated in the Circuit Court of Mobile County, Alabama and the Alabama Court of Civil Appeals. (*Compare, e.g.,* T.T. 166-71 *with* State's Exhibit 7).[10]

So, despite the sum and substance of Judge Smith's October 15, 2012 Order, Lucy admitted during the hearing conducted in Probate Court on January 17, 2013, on the Petition to Nullify and Expunge a Recorded Instrument filed by Jo Jo Schwarzauer, that he recorded/filed the lien on December 19, 2012 with knowledge of Judge Smith's Order and despite there being no default judgment against the Circuit Clerk. (*Compare* T.T. 179-82 *with* State's Exhibit 8). On January 18, 2013, Probate Judge Don Davis entered an Order which, in relevant measure, granted Schwarzauer's Petition to Nullify and Expunge a Recorded Instrument, declared all such documents recorded by Lucy to be null and void, and instructed the Clerk of the Probate Court to redact, nullify and expunge and otherwise remove all those documents from the public records maintained by the Probate Court. (*Compare id. with* T.T. 154-55.) Judge Davis' Order otherwise reads, in relevant measure, as follows:

> Lucy acknowledged that he prepared and executed the documents [recorded in Probate Court on December 19, 2012 in Book 6968, page 1138 and Book 6968, page 1143].

---

[10]     In other words, the sole purpose of the ejectment action, that is CV11-0852, was to "eject" or get Lucy "out" of the property at 413 Chin Street after the ownership of that piece of property was fully adjudicated in CV-2010-1682 (*see id.* at 170-71) and, indeed, in CV-2011-0852, Cox's complaint for ejectment was granted and an order of ejectment was entered (*see id.* at 166). *See Ex parte McKinney,* 87 So.3d 502, 508 (Ala. 2011) (recognizing that in order to maintain an action for ejectment, a plaintiff must allege either actual possession of the property or legal title to the subject property).

Lucy's explanation for the recording of the documents is[:] (1) [] the Petitioner is an elected official and as such has a contractual relationship with the general public which includes Lucy, (2) the Petitioner failed to comply with Lucy's request that a judgment be entered against Stephen J. Cox in the Circuit Court lawsuit, (3) the Petitioner's failure to act upon Lucy's judgment request violates Rule 55 of the Alabama Rules of Civil Procedure, (4) Lucy gave notice to the Petitioner that Lucy asserted a claim against the Petitioner for the sums that Lucy believes Stephen J. Cox owes Lucy in the Circuit Court Lawsuit, (5) the Petitioner failed to respond to Lucy's notice of claim, (6) the Petitioner breached the Petitioner's contract with the general public and Lucy specifically, thus Lucy has a commercial lien against the [P]etitioner, and (7) as a result of the Petitioner's failure to respond to Lucy's claim, Lucy was entitled to recover from the Petitioner the amount that Lucy believes Lucy is due to receive from Stephen J. Cox, forty-two million dollars. Lucy's explanation is not grounded in the law.

The documents contain materially false information and were filed by Lucy with knowledge of their falsity and knowing that the documents would be recorded and registered in the public record maintained by this Court. More specifically[:] (1) Lucy has not filed an action against the Petitioner, (2) no judgment was ever entered by any court in favor of Lucy against the [P]etitioner, (3) there is no basis in Alabama law for the ["]Commercial Lien,["] ["]Notice of Default—Affidavit of Amount Due,["] ["]Notice of Amount Due and Right to Cure,["] ["]Writ of Execution,["] and/or ["]Writ of Seizure["] recorded by Lucy and adverse to the Petitioner, and (4) no judgment or any other instrument exists that evidences any indebtedness of the Petitioner to Lucy. The documents recorded by Lucy involve and detrimentally affect the Petitioner's interest and possibly future interest in real and personal property as well as the Petitioner's ability to enter into contractual relationships with others.

On December 27, 2012 the Court served upon Lucy by United States Certified Mail and United States First Class Mail[] the Court's ["]Notice of Petition to Nullify a [R]ecorded [D]ocument["] [("Notice")]. In the Notice Lucy was advised of[:] (1) the petition filed by the [P]etitioner, (2) the hearing to be conducted January 17, 2013, (3) Lucy's ability to file with this Court any evidence or proof to support the legitimate and legal filing of the documents within fourteen days of the issuance of the [N]otice, (4) failure on the part of Lucy to respond to the [N]otice within fourteen days could result in the documents being declared null and void, (5) Act of Alabama 2012-209 makes it a crime with penalties for offering a document to a public office or employee for recording, registration, filing, etcetera, that contains material false statements or information with intent to defraud, and (6) Lucy obtaining legal advice and/or counsel. Lucy failed or refused to take any action with regard to the documents after said notice

was given by the Court, except to request the issuance of several subpoenas for the January 17, 2013 hearing.

Upon consideration of all the evidence and argument presented, the Court is of the opinion and therefore concludes that: (1) the documents filed by Lucy with this Court's recording division are materially false, (2) Lucy knew that the documents were false at the time Lucy recorded the documents in this Court's recording division, (3) the Petitioner's Petition to Nullify and Expunge a [R]ecorded [I]nstrument is due to be granted, and (4) the relief sought by the Petitioner is due to be granted.

(*Compare* T.T. 151-54 *with* State's Exhibit 8, at 1-2.) Schwarzauer testified during

Lucy's criminal trial that she had to file the Petition in Mobile County Probate Court

because Lucy's recorded lien could have caused her serious problems in the event she

tried to get a loan, refinance her house, buy another home, etc. (T.T. 184.) The Mobile

County Circuit Court stated she had never before been attacked in this manner and she

has been made to deal with this matter since 2012 simply because Lucy did not get a

judgment he thought he should get and decided to take his frustration out by personally

blaming her. (*See id.*)

Lucy, who represented himself during the trial of this cause, testified that he was

a "small real estate investor[]" who had several properties taken from him

"systematically by a couple of guys." (T.T. 204-05.) Petitioner then testified under oath

that he filed suit against those unidentified individuals, then filed for a default judgment

against them, which was granted and entered by the Clerk on December 7, 2011. (*See

id.* at 205-06.) The remainder of Lucy's testimony, however, reflects that no such

judgment was entered and, instead, only entries of default were entered. (*Id.* at 206-07.)

[The judgment] was for a sum of forty-two million dollars which the case I had sued the other people for, that's for the amount that I sued the other parties for because of the real estate. Well, see, according to Rule

55(b)(1) of the Alabama Rules of Civil Procedure it states in pertinent part that if you have a sum certain or the sum could be made certain by computation, which means if you can compute it and come up with a certain sum, the clerk shall enter the judgment. You don't have to go through the Court. The clerk has this power. So once that was brought to their attention I submitted my documents and ***she entered the default. But she didn't enter the judgment.*** The rules state that she shall enter a default judgment because of the amount certain and she refused to do that. So then I notified her and I notified her several times. Even in the documents that was submitted by the State I gave her a right to cure. This was not an intent to harass her. Otherwise, you would have just filed documents and not said anything.

(*Id.* at 206-07 (emphasis supplied)). After Lucy began making comments about the trial court's quashing of subpoenas, being thrown in jail without bond, and filing suit in federal court for false imprisonment, the court cut off any further opportunity for Petitioner to give testimony. (*See id.* at 207-09.) In addition, while the Court allowed certain of Lucy's exhibits (1-6) to be marked for identification, they were not admitted into evidence because Lucy had lost his right to testify. (*Id.* at 211-12; *see also id.* at 209-10).[11]

---

[11] During a status conference conducted prior to trial on September 11, 2014, a plea offer was made to Lucy to reduce the charged Class C felony to a Class A misdemeanor of obstruction of justice/obstruction of governmental operations. (Doc. 20, Exhibit A, Part 2, Hearing Tr., at 4; *see also id.* ("The sentence I've offered is one year in Metro Jail suspended however for one year of formal probation with Community Corrections. There would be costs of court assessed and that's all. If we proceed on the felony and he is convicted, he has three prior felonies and his range of punishment is fifteen years to ninety-nine years in the State Penitentiary.")). Lucy rejected this plea deal, opting instead for a trial at which he had exercised his constitutional right to represent himself. (*See id.* at 5-6).

Prior to jury selection on January 5, 2015, the trial judge, Joseph S. Johnston, took up a number of motions filed by Lucy (*see* Doc. 20, Exhibit A, Part 2, T.T. 11-46). The first motion discussed was Lucy's January 2, 2015 motion seeking the recusal of Johnston on the basis that Lucy had named Johnston as a defendant in a civil case pending in this Court, the United States District Court for the Southern District of Alabama. (*See id.* at 11). The trial judge denied the motion to recuse on the basis that he was both unaware of the lawsuit and did not know (nor did he want to know) what it was about as he had not been served the complaint. (*See id.* at 11-13). (Continued)

The trial court charged the jury on the elements of offering a false instrument for recording against a public servant in the following manner:

> A person commits the crime of offering a false instrument for recording against a public servant if a person offers for recording a written instrument which relates to or affects the real or personal property . . . or an interest therein or a contractual relationship of a public servant, knowing that the written instrument contains a material false statement or [] material false information with the intent to defraud, intimidate or harass the public servant or to impede the public servant in the performance of his or her duties. To convict, the State of Alabama must prove beyond a reasonable doubt each of the following elements of the offense of offering a false instrument for recording against a public servant. One, that the Defendant offered a written instrument for recording in a public office against a public servant. Two, that the written instrument relates to or affects the real or personal property or an interest therein or a contractual relationship of the public servant. Three, that the Defendant filed the instrument knowing that it contained a material false statement or material false information. Four, that the Defendant did so with the intent [to] defraud, intimidate or harass the public servant or to impede the public servant in the performance of her duties, Five, the Defendant acted intentionally.

> A public servant is any officer or employee of government including legislators and judges and any person or agency participating as an advisor, consultant or otherwise performing a public function.

---

"There are plenty of opinions from the Judicial Inquiry Commission that when a litigant files a complaint against a judge, when a judge already has a case pending and it appears that the litigation is designed to harass, intimidate, and/or get the judge to recuse himself, that the judge has no obligation to do that. I don't even know what your litigation is about and I don't want to know what it's about." (*Id.* at 12-13; *see also id.* at 13 ("I can give you an absolutely fair trial, Mr. Lucy.")).

Also addressed at some length was the Court's quashing of Lucy's requests for witness subpoenas both in the presence of the State (*see id.* at 29-32 & 39-45) and outside the presence of the State (*see id.* at 111-124). The trial court refused to set aside its quashing of the witness subpoenas to eight members of the news media in Mobile and three judicial officers due to Lucy's refusal to proffer the relevant evidence that the witnesses would offer if called to testify. (*See id.*).

A person acts intentionally with respect to a result or to conduct when it is his or her purpose to cause that result or to engage in that conduct.

.    .    .

Now, I have used the word intent in my charge. I charge you that a person acts intentionally with respect to conduct described by statute defining an offense when it is his or her purpose to cause that result or to engage in that conduct. Intent is a state of mind. Intent can be formed in an instant. There is no requirement in the law that intent to commit a crime be formed well in advance of committing a crime or that intent be premeditated. There's generally no way to prove intent by positive direct evidence. So you, a jury, have a right to take into consideration all of the evidence of all of the surrounding facts to determine what a person's intent was at a given time.

(T.T. at 242-43, 243-44 & 245-46).

On January 6, 2015, a jury of Lucy's peers found him guilty of the offense of offering a false instrument for recording against a public servant as charged in the indictment under Alabama Code § 13A-9-12(c). (T.T. 263; *see also id.* at 264-65 (polling of the individual jurors)). On January 26, 2015, Lucy was sentenced to a 30-year term of imprisonment under Alabama's Habitual Felony Offender Statute. (T.T. 317.) Thereafter, Lucy entered oral notice of appeal. (*Id.*).

On appeal, Lucy raised two issues, namely, that the trial court committed reversible error when it afforded him the right to represent himself and when it admitted into evidence his three prior felony convictions. (*See* Doc. 20, Exhibit B, at 4-5 (Lucy's appellate brief)). The Alabama Court of Criminal Appeals rejected Lucy's two appellate claims and affirmed his conviction and sentence in a 10-page unpublished memorandum opinion. (Doc. 20, Exhibit D) Lucy's application for rehearing (Doc. 20, Exhibit E) was overruled on March 11, 2016 (Doc. 20, Exhibit F). And though Lucy did

file a petition for writ of certiorari (Doc. 20, Exhibit G), the Alabama Supreme Court, on April 14, 2016, instructed Lucy to show cause why the petition should be considered timely filed (Doc. 20, Exhibit H) and then, by subsequent order entered on April 29, 2016, Alabama's High Court struck the petition for writ of certiorari for failure to comply with Ala.R.App.P. 39(c)(2) (Doc. 20, Exhibit H-1).

Lucy filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama collaterally attacking his conviction and sentence on October 26, 2016. (*See* Doc. 20, Exhibit J, March 21, 2017 ORDER, at 2.) In his Rule 32 petition, Lucy raised numerous claims but among them the same claims he raises in the instant habeas corpus petition. (*Compare* Doc. 20, Exhibit J, PETITION FOR RELIEF FROM CONVICTION OR SENTENCE, at 9, 10 & 14 ("The 6th Amendment to the United States Constitution states 'in all criminal prosecutions the accused shall enjoy the right to have a compulsory process for obtaining witnesses in his favor' [and] Petitioner was denied this right as the trial judge quashed the subpoenas of all the witnesses subpoenaed by Petitioner to testify on his behalf. . . . The 14th Amendment to the United States Constitution states 'no State shall deny any person within its jurisdiction the equal protection of [the] laws' [and] Petitioner was denied this right as the trial judge (Judge Joseph Johnston) was the defendant in a civil action brought by this Petitioner in the United States District Court that was pending during the time Petitioner was on trial in the Mobile County Circuit Court (Jan. 6, 2015) and also reviewed on the same day again by the U.S. District Court as the day trial Judge (Judge Johnston) sentenced Petitioner to prison (Jan. 26, 2015). 'Clear Conflict of Interest'. [] The 14th Amendment to the United States Constitution states 'no state shall deprive any person of life, liberty or property without due process

16

of law' [and] Petitioner was denied this right, as the trial judge ordered all evidence submitted by Petitioner to prove his innocence labeled as 'exhibits' and withheld from [the] jury during their deliberation[s][12]. . . . Petitioner was '**NOT ARRAIGNED**' so the trial court lacked the authority and abused its discretion by trying petitioner and sentencing him to prison without first formally charging him with a crime and making sure he understood the charge against him.") *with* Doc. 12 (asserting that his trial judge had a conflict of interest and should have recused himself, that he has never been arraigned, that he was denied the right to call witnesses on his behalf, and that he was not allowed to submit evidence on his behalf)). By order dated March 21, 2017, Mobile County Circuit Judge Jay York summarily denied Lucy's Rule 32 petition without holding an evidentiary hearing (Doc. 20, Exhibit J, ORDER). The trial court determined that Petitioner's claim that he was never arraigned lacked merit and was precluded under Ala.R.Crim.P. 32.2(a)(2) & (5) (*id.* at 2 & 7); his Sixth Amendment compulsory process claim was precluded under Rule 32.2(a)(2) of the Alabama Rules of Criminal Procedure (*id.* at 3-4); his Equal Protection claim was precluded under Ala.R.Crim.P. 32.2(a)(2) & (4) (*id.* at 4-5); and his claim that he was not allowed to admit all of his evidence at trial was precluded because it was raised and addressed at trial (*id.* at 5).

---

[12]    The only such "evidence" of innocence Lucy ever makes specific mention of is "a document entitled 'Right to Cure[.]' This document gave the Mobile County Circuit Clerk (Jo Jo Schwarzauer) the ability or right to settle the dispute or discrepence (sic) between herself and Petitioner [] simply by fulfilling her 'Oath of Office' and follow the law as prescribed at Rule 55(b)(1) of the Alabama Rules of Civil Procedure and enter judgment in favor of Petitioner who is plaintiff in Civil Action CV11-0852 counterclaim." (Doc. 20, Exhibit J, Rule 32 Petition, at 17.) As reflected above, this "Right to Cure" was admitted into evidence (as part of State's Exhibit 2) and the contents of same were read to the jury. (T.T. 147).

Lucy appealed and at various portions in his appellate brief, Petitioner asserted the foregoing claims, three of those claims being best encapsulated by his argument that he was denied due process and a fundamentally fair trial on account of the trial judge's conflict of interest, as well as the trial judge's failure to allow him to call witnesses or present evidence on his behalf. (*See* Doc. 20, Exhibit K, at 20; *see also id.* at 13 & 15-16.) The Alabama Court of Criminal Appeals affirmed the trial court's summary dismissal of the Rule 32 petition by unpublished memorandum decision entered on October 6, 2017. (Doc. 20, Exhibit M).

> The instant petition was deemed filed on October 26, 2016. In the petition, Lucy argued that: (1) he was not arraigned; . . . (4) he was denied the right to subpoena witnesses on his behalf; . . . (8) he was not allowed to introduce all of his evidence at trial . . . .
>
> On February 23, 2017, the State filed a response and motion to dismiss arguing that Lucy's petition was time-barred under Rule 32.2(c), Ala.R.Crim.P., precluded under Rules 32.2(a) and 32.2(b), and lacked specificity. On March 6, 2017, Lucy filed a reply to the State's response wherein he argued: (17) he was denied due process because, he said, the trial judge had a conflict of interest. On March 21, 2017, the circuit court issued an order dismissing Lucy's petition.
>
> .        .        .
>
> On appeal, Lucy appears to reassert claims (1), (4), (8), (13), [and] (14). Lucy, however, does not appear to raise in his brief on appeal claims (2), (3), (5)-(7), (9)-(11), (12), and (15)-(17), and thus, those claims are deemed abandoned. <u>Brownlee v. State</u>, 666 So.2d 91, 93 (Ala.Crim.App. 1995).
>
> Claim (1), as noted above, alleges that Lucy was never arraigned. Lucy's claim is refuted by the record and is, therefore, without merit. Indeed, the record shows that Lucy was initially arraigned on February 13, 2014, before Judge Michael Youngpeter and that after Judge Youngpeter recused, Lucy was rearraigned before Judge Joseph Johnston on April 23, 2014. Accordingly, Lucy is not entitled to relief on this claim.

Claim (4), as noted above, alleges that Lucy was denied the right to subpoena witnesses on his behalf. In its sentencing order after trial, the circuit court held:

> The witness subpoenas you filed with the Court were going to command, under the seal of this Court, dozens of citizens (sic) who had no knowledge of the facts of this case to appear at the trial on January 5, 2015. Subpoenas for witnesses, such as television reporters and anchormen were filed who had no firsthand knowledge of the facts of this case. Some witness subpoenas were filed in the week prior to the trial. This was discourteous, as all of these witnesses appear to have jobs and, even if they had possessed material evidence, should have been afforded more time than a few days' notice that they needed to appear.

Based on that, Lucy failed to provide any relevant information regarding the witnesses' testimony. Accordingly, Lucy is not entitled to relief on this issue.

Claim (8), as noted above, alleges that Lucy was not allowed to introduce all of his evidence at trial. Lucy specifically alleged in his petition that he "was denied discovery requested from prosecution (evidence of in other cases that would have helped prove [Lucy's] case)." Lucy's claim, however, is nothing more than a bare allegation. As such, we conclude that this claim was not sufficiently pleaded to satisfy the requirements in Rule 32.3, Ala.R.Crim.P., which provides that "[]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief," and Rule 32.6(b), Ala.R.Crim.P., which provides that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." Accordingly, Lucy is not entitled to relief on this issue.

.   .   .

Based on the foregoing, the judgment of the circuit court is affirmed.

(*Id.* at 2, 2-3, 3-4 & 5 (internal citations omitted)). Lucy's petition for rehearing en banc

or, in the alternative, motion to show cause (Doc. 20, Exhibit N)[13] was overruled on

---

[13]     Lucy's petition for rehearing en banc or, in the alternative, motion to show cause reads, in its entirety, as follows:

Come now Petitioner William N. Lucy in the above styled case and moves this honorable court to reconsider Rule 32 post-conviction relief appeal en-banc and/or show cause why proper protocol was not followed:

1).  Show cause why this Court failed or refused to rule on the issue[s] raised by this Petitioner, the fact that the trial court adopted the State's answer[] verbatim to Petitioner's Rule 32 petition in opposition to the Alabama's Supreme Court presidence (sic) set in the case(s) of Ex parte Gram[,] 51 So.3d 1119[,] at 1124 (Ala. 2010) and Ex parte Scott[,] [MS 1091275 March 18, 2011] So.3d[,] 2011 Ala. LEXIS 37 (Ala. 2011), reversing the lower court's ruling.

2).  Show cause why appellant's reply brief was not used by this Court to determine the merits of this case.

3).  Show cause why this Court felt it necessary to supplement appellant's initial brief.

4).  Show cause why this Court failed to or refused to acknowledge the case action summary of case No. CC 13-5332, which verify this Petitioner has not been arraigned as it show arraignment was set for April 23, 2014, reset for May 2, 2014, then reset for August 2020, since the case action summary is the official court record of the events in the court case; this Court stated in its ruling that the record shows appellant was arraigned on April 23, 2014 by Judge Joseph Johnston, yet the State shows in its appellee's brief that this appellant was arraigned April 23, 2014 by Judge Jay York. The case action summary attached to appellant's reply brief shows you are both wrong . . . case action summary case CC13-5332 show arraignment was set for April 23, 2014, then reset for May 2, 2014 and reset for August 2020. Official record verify appellant/petitioner has not been arraigned . . . Article 1 Section 6 of Alabama Constitution 1901 mandate a new trial when accused has not been arraigned.

5).  Show cause why this Court failed or refused to acknowledge case action summary of Civil Action CV11-0852 Counterclaim attached to Appellant/Petitioner's "Reply Brief of the Appellant" that will show this case (CC13-5332) is civil action in nature and appellant/petitioner is actually innocent of any criminal wrongdoing.

6).  Show cause why this Court failed or refused to acknowledge case action summary of case no. 1:14-cv-00185-CG-B, which verify the conflict-of-

(Continued)

20

October 27, 2017 (Doc. 20, Exhibit O). And since there is no evidence in the record that Lucy petitioned the Alabama Supreme Court for writ of certiorari, the certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on November 15, 2017 (Doc. 20, Exhibit P).

As previously indicated, Lucy originally filed his petition seeking habeas corpus relief in the Northern District of Alabama (*see* Doc. 7) but after that Court transferred his action to this Court and Petitioner was instructed to file his complaint on this Court's form § 2254 petition, Lucy filed his § 2254 habeas corpus petition in this Court on May 30, 2018 (Doc. 12, at 12). Therein, Petitioner raises the following issues which he claims entitle him to federal habeas corpus relief: (1) the trial judge had a conflict of interest and should have recused himself since he was a defendant in a civil action pending in federal court; (2) he was never arraigned on the underlying charge of offering a false instrument for recording against a public servant; (3) he was denied the right to call witnesses on his behalf; and (4) the trial court did not allow him to submit evidence on his behalf. (*Id.* at 6-8).

Because the respondent argued in her answer that Lucy failed to exhaust his jury

---

interest of then trial judge Judge Joseph Johnston that's attached to the "Reply Brief of the Appellant."

7).   Show cause why all issues raised in Rule 32 petition, properly preserved for appellate review and raised on appeal with specificity and verified and proven by the 310 pages of evidence and exhibits, submitted with the reply brief of the appellant but has not been acknowledged as received by this Court.

For all of the above reasons both jointly and severally this case is due to be and should be reversed, remanded and [a] new trial granted.

(*Id.* at 1-3.)

claims in state court and, as a consequence, this Court is prohibited by the procedural default doctrine from considering the merits of those claims (*see* Doc. 20), the undersigned explained the procedural default defense to Lucy by order dated August 29, 2018, and extended to him the opportunity to establish cause and prejudice for any procedural defaults or extraordinary circumstances implicating a fundamental miscarriage of justice (*see* Doc. 21). In addition, the undersigned also parenthetically extended to Petitioner the opportunity to explain to this Court why the Respondent's alternative "merits" response to grounds two through four of the petition was incorrect. (*See id.* at 5 n.2).

In response to the Order, Lucy filed a pleading on October 1, 2018, in which he contends that cause for the default of these issues was the Alabama Supreme Court's failure/refusal to acknowledge receipt of a document containing these issues, a stance he claims is "proven" by the petition for writ of mandamus filed in this Court, *see Lucy v. State of Alabama*, CV 16-0470-CG-N (Doc. 27, at 3 ("The Petition for Writ of Mandamus filed in the U.S. District Court and reviewed by Hon. Cassie (sic) Granade (see [] case CA 16-00470-CG-N) seeking an order to compel Alabama Supreme Court to answer issues submitted by this Petitioner[ which,] to date[,] the Alabama Supreme Court has failed or refused to give answers to issues raised and presented for adjudication.")). Petitioner also contends that he is actually innocent of the crime upon which his custody is based, such that this Court's failure to consider the merits of his claims will result in a fundamental miscarriage of justice. (*See id.* at 5-9).[14]

---

[14]　On the same date that Lucy filed his response to this Court's show cause order, he also filed a rebuttal to the State's answer. (*See* Doc. 28.) In the context of this rebuttal, Lucy (Continued)

## CONCLUSIONS OF LAW

### A.    Procedural Default Doctrine.

In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas

---

not only attempts to establish the "merits" of the four issues raised in the instant habeas corpus petition (*see id.* 3-6) but, as well, makes broad and conclusory allegations regarding other issues—that he was not allowed to cross-examine witnesses, he was denied access to court, and there is evidence of jury tampering (*see id.* at 6-8 & 9)—and then purports to put this Court on notice that it should not regard any other issues not raised herein to have been abandoned by him (*id.* at 8).

   Petitioner's attempt to assert new claims for the first time in his Rebuttal (Doc. 28, at 6-9), is not allowed by the applicable rules, Rule 2(c) of the Rules Governing Habeas Corpus Cases Under Section 2254 specifically providing that "[t]he petition ***must*** [] specify ***all*** the grounds for relief available to the petitioner . . . ." 28 U.S.C. foll. § 2254, Rule 2(c)(1) (emphasis supplied). Indeed, a petitioner "may not amend his petition as a matter of course by including new independent claims in his" Rebuttal to the Respondent's answer, because the Respondent has already served her answer. *Harter v. Secretary, Dep't of Corrections,* 2011 WL 761546, *20 (M.D. Fla. Feb. 24, 2011), citing Fed.R.Civ.P. 15(a) (a party is permitted to amend a pleading once "as a matter of course" at any time before a responsive pleading is served or, otherwise, only by leave of court or by written consent of the adverse party); and 28 U.S.C. foll. § 2254, Rule 11 (providing that the district court may apply the Federal Rules of Civil Procedure consistent with the Rules governing § 2254 proceedings). And since Lucy did not raise these claims (that is, "no cross-examination," denial of access to court, and jury "tampering") in his Petition or seek leave to amend his Petition to add these claims, he is barred from raising them in his Rebuttal to the Respondent's Answer "since Respondent has not been afforded an opportunity to address them." *Harter, supra,* citing, *e.g., Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir. 1994) (finding traverse is not proper pleading to raise additional grounds for relief; instead, for the Respondent to be appropriately advised of additional claims, those claims should be raised in an amended petition or statement of additional claims). Besides, as parenthetically noted, *infra,* this Court is procedurally barred from reaching the merits of any of these new claims because they were not fairly presented to the Alabama Supreme Court and it is now too late for Petitioner to exhaust these claims in Alabama's High Court.

23

review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S. 1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id*. at 731, 111 S.Ct. at 2554.  The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .      .      .
>
> [A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him.  (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or

habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."). In all other cases, the presumption is not applicable. *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts. *Id.* at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). Moreover, the presumption "looks through" unexplained orders to the last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*,[__ U.S., at __, 111 S.Ct., at 2559], we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly, where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594. Also, the presumption may not be applied in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue. *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative,

addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotation marks and citations omitted).

In her answer, Respondent asserts that Petitioner's four claims raised in his habeas corpus petition are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) due to Lucy's failure to "fairly present" this claim throughout "one complete round of the State's established appellate review process[,]" *id.* at 845, 119 S.Ct. at 1732 (*see* Doc. 20, at 2-3 & 11-12), and that court would now find the claim procedurally barred, *compare McNair v. Campbell,* 416 F.3d 1291, 1302 & 1305 (11th Cir. 2005), *cert. denied sub nom. McNair v. Allen,* 547 U.S. 1073, 128 S.Ct. 1828, 164 L.Ed.2d 522 (2006), *with Kelley v. Secretary for Dep't of Corrections,* 377 F.3d 1317, 1344 & 1351 (11th Cir. 2004), *cert. denied,* 545 U.S. 1149, 125 S.Ct. 2962, 162 L.Ed.2d 906 (2005). Here, Petitioner contends that this is not true and that he attempted to exhaust his state remedies by raising these issues in the Alabama Supreme Court but that Alabama's High Court refused to acknowledge receipt of his pleading(s) and to give answers to the issues raised and presented. (Doc. 27, at 3). Indeed, as "proof" that the Alabama Supreme Court refused to acknowledge receipt of or address the issues raised to it (and, specifically, the four issues he raises in his habeas corpus petition) Lucy points the undersigned to the writ of mandamus he filed in this Court in *Lucy v. State of Alabama,* CA 16-0470-CG-N, which he asserts sought "an order to compel [the] Alabama Supreme Court to answer issues submitted by this Petitioner[.]" (*Id.*) A quick online review of *Lucy v. State of Alabama* establishes that Lucy's cause argument is untenable. It is certainly true that Petitioner filed a Petition for Writ of Mandamus in the just-referenced case, *see id.,* CA 16-0470-CG-N*,* Doc. 1; however, that petition was filed on September 6, 2016, *id.*, more than one month **prior to** the October 26, 2016 filing date of Lucy's Rule 32 petition (*see, e.g.,* Doc. 20, Exhibit

J, March 21, 2017 ORDER, at 2) and more than one year *prior to* the Alabama Court of Criminal Appeals' October 6, 2017 affirmance of the trial court's summary dismissal of his Rule 32 petition (*see* Doc. 20, Exhibit M) and that court's October 27, 2017 denial of Lucy's petition for rehearing (Doc. 20, Exhibit O). And since any action by the Alabama Supreme Court would have come *after* October 27, *2017*, Petitioner obviously cannot credibly argue that the Petition for Writ of Mandamus he filed in this Court on September 6, *2016*[15] demonstrates that the Alabama Supreme Court refused to acknowledge his attempt to exhaust the four claims he raises in the instant habeas corpus petition to that court in late *2017.*[16] And because Petitioner has not credibly

---

[15]     The petition for writ of mandamus and Lucy's motion to amend the petition were denied and his federal action was dismissed by this Court. *Lucy v. State of Alabama*, CA 16-0470-CG-N, Docs. 6-7; *see also id.,* Doc. 4.

[16]     Even had Lucy attempted to exhaust to the Alabama Supreme Court in late 2017, it is clear that any pleading in that court necessarily would have had to "piggyback" off Petitioner's application for rehearing filed in the Alabama Court of Criminal Appeals, which is why the undersigned set that application out in its entirety (*see* Doc. 20, Exhibit N, at 1-3). And that application for rehearing before the Alabama Court of Criminal Appeals makes specific mention only of Lucy's claim that he was not arraigned and such failure is a basis for a new trial under Alabama's Constitution and his claim that the trial judge had a conflict of interest; thus, Petitioner's other two claims would "remain" defaulted under *O'Sullivan v. Boerckel*, as would any "new" claims Lucy attempts to raise in his Rebuttal (Doc. 28, at 6-9). In addition, it is questionable whether the two identified claims of no arraignment and a trial judge with a conflict of interest would in any manner of speaking be preserved for review in this Court since Lucy makes no mention in the application for rehearing of any federal law bases for these two claims (*see* Doc. 20, Exhibit N, at 1-3). *See Duncan v. Henry,* 513 U.S. 364, 365-66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial [,for instance,] denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). Here, as reflected in Exhibit N, Lucy did not advise the Alabama Court of Criminal Appeals (nor could he have advised the Alabama Supreme Court) of the federal nature of his arraignment and conflict of interest claims; therefore, these claims, as well, would remain unexhausted and procedurally defaulted.

established cause for his default of these four claims,[17] this Court need not determine whether Lucy has established the prejudice prong of the cause and prejudice standard.[18] *See, e.g., Ward v. Hall,* 592 F.3d 1144, 1157 (11th Cir.) ("It is well

---

[17]     The undersigned makes clear that these claims were not raised in Lucy's direct appeal but, instead, were raised for the first time in his Rule 32 collateral petition. (*Compare* Doc. 20, Exhibits B & D (direct appeal) *with, e.g.,* Doc. 20, Exhibit J (Rule 32 petition)). And to the extent Lucy may claim that he attempted to raise such claims to the Alabama Supreme Court on direct appeal, he could not have done so because those issues bear no relation to the two issues Lucy's appointed appellate counsel raised on direct appeal, which were that the trial court erred in allowing him to represent himself at trial and that the trial court erred in admitting prior felony convictions during the sentencing hearing (*see* Doc. 20, Exhibits B & D).

[18]     However, even if the undersigned was to address the prejudice prong in connection with Petitioner's "no arraignment" and "conflict of interest" claims, he would find no safe harbor in this Court inasmuch as these two claims lack merit. In arguing that he was never arraigned on the charge of offering a false instrument for recording against a public servant, Petitioner refuses to acknowledge any document other than the case action summary sheet in his criminal case. And while even that document contains entries that Lucy was to be arraigned on April 23, 2014, which was reset for April 24, 2014, with the corresponding entry of an Order on April 24, 2014 (*see* Doc. 20, Exhibit A, Part 1, Case Action Summary for CC-2013-05332), Lucy "seizes" upon a later entry on the docket sheet putatively setting arraignment on "08/07/2020" as sacrosanct evidence that he was never arraigned despite a concomitant entry setting trial for August 20, 2014 (*see id.*). That position is unavailing to Lucy in light of all of the other evidence in the record that he was arraigned on the indicted felony charge not once but twice. Initially, Lucy's criminal case was assigned to Circuit Judge Michael Youngpeter and the Petitioner was arraigned by Judge Youngpeter on February 13, 2014, prior to Judge Youngpeter realizing that he needed to recuse himself because he presided over prior civil proceedings involving Lucy; therefore, in the order of recusal, Judge Youngpeter suggested that Lucy be re-arraigned. (Doc. 20, Exhibit A, Part 1, at 42.) That suggestion was acted on, Lucy initially appearing before Judge Joseph S. Johnston on April 23, 2014 for arraignment before having the arraignment "carried over to the next day, April 24, 2014." (*Compare id.* at 50-53 (order denying defendant's motion to dismiss and granting defendant the right to represent himself *pro se*) *with id.* at 17 (order at arraignment)).

> This matter came before the Court for arraignment of the Defendant on April 23, 2014, the case being assigned to the undersigned after the recusal of the Honorable Michael Youngpeter.
>
> The Defendant's arraignment was previously set for March 26, 2014 and the Defendant did not appear. Therefore, the Court issued a writ of arrest which is standard when criminal defendants do not appear at arraignment. The Defendant was arrested pursuant to the writ . . . . He was set on the first available day for arraignment, which was April 23, 2014[,] and claimed that he had already been arraigned and desired to represent himself. As the Court had

(Continued)

no record of any arraignment, the matter was carried over to the next day, April 24, 2014[,] and the Court discovered paperwork indicating that the Defendant was arraigned before Judge Youngpeter before his recusal. Because of this, he needed to be arraigned before this Court, advised of the trial date and the Court needed to ascertain whether Defendant intended to represent himself.

The Defendant made an oral Motion to Dismiss this case "due to prosecutorial misconduct." The "prosecutorial misconduct" as claimed by the Defendant was issuance of the writ of arrest as he claims that either the prosecution asked that the writ be issued knowing he had been arraigned or should have known he had been arraigned. The writ of arrest was issued by the Court as is standard procedure when a criminal defendant does not appear for a court hearing.

While the Defendant may have entered a plea of "NOT GUILTY" before Judge Youngpeter, an arraignment consists of more than just entering a plea. Rule 14.2(a) [of the] Alabama Rules of Criminal [P]rocedure states the <u>Mandatory Procedure</u> at arraignment:

(1) Determine whether the Defendant is represented by counsel, and, if not, appoint counsel to represent the Defendant if appropriate under Rule 6.1; (2) Determine that the Defendant or Defendant's attorney has received a copy of the charges against the Defendant; (3) Determine the age of the Defendant and whether the Defendant is entitled to the benefits of the Youthful Offender Act, and[,] if so, proceed as provided therein, or, if not, ascertain and accept the Defendant's plea unless the arraignment is continued to a later date; and (4) Advise the parties in attendance of any dates set for further proceedings.

Thus, the Court finds that because the Defendant had not been properly arraigned before this Court, in particular no ascertainment was made as to self-representation, as well as the dates of disposition and trial had not been given to the Defendant nor had the Court's pre-trial Order, said arraignment was necessary and Defendant's failure to present himself at the arraignment on March 26, 2014 gave the Court even more good cause to issue a writ of arrest for the Defendant. This was an action of the Court, not the prosecution, thus the Defendant's Motion to Dismiss for Prosecutorial Misconduct is **DENIED**.

At the arraignment, the Defendant stated that he wanted to represent himself. The Court cautioned him against this and offered the appointment of an attorney. As the Court had some concern over the Defendant's mental health, it conducted an enhanced <u>Faretta</u> hearing which included an[] extensive colloquy with the Defendant. The Court asked:

.     .     .

(Continued)

established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice."), *cert. denied,* 562 U.S. 1082, 131 S.Ct. 647, 178 L.Ed.2d 513 (2010) .

The fundamental miscarriage of justice/actual innocence exception does not apply in this case because Petitioner has not satisfied the standard set forth in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires

---

> Do you know what you are charged with? ***Do you understand that you are charged with offering a false instrument for recording in a public office against a public servant*** . . .?
>
> At the conclusion of the colloquy the Court was more than satisfied that the Defendant knowingly, voluntarily, and intelligently waived his right to assistance of counsel under the 6th Amendment of the United States Constitution and Article I, Section 6 of the Alabama Constitution of 1901[.]

(*Id.* at 50-52, 52 & 53.) The foregoing evidence conclusively establishes that Lucy was arraigned not once, but twice, and each time was apprised of the charges against him. Indeed, Lucy admitted in open court before Judge Johnston that he should not have been arrested for failing to appear for arraignment before Judge Johnston in March of 2014 because he had already been arraigned by Judge Youngpeter on the underlying charge. (*See id.*) Therefore, his claim that he was not arraigned has no merit, as specifically determined by the Alabama Court of Criminal Appeals (*see* Doc. 20, Exhibit M, at 4-5).

Lucy's claim that the trial judge had a conflict of interest due to Petitioner naming him as a defendant in a federal suit filed in this Court, *see Lucy v. Johnston,* CA 14-0185-CG-B, and, therefore, should have recused himself, has no merit for the simple fact that Petitioner's motion to proceed without prepayment of the (federal) filing fee was denied and his action dismissed by this Court (prior to service) without prejudice pursuant to 28 U.S.C. § 1915(g) on October 20, 2014, *see Lucy v. Johnston, supra,* at Docs. 9 & 10; *see also* Doc. 7, well before Lucy filed his January 2, 2015 motion for recusal in state court, a mere three days before his criminal trial was to begin (*compare* Doc. 20, Exhibit A, Part 1, at 106 *with* Doc. 20, Exhibit A, Part 2, T.T. 11-13). And while Lucy correctly observes that he continued to "litigate" his federal action after his state-court trial began, there were no "substantive" issues being litigated; instead, the sole issue being litigated was whether Lucy would be granted leave to appeal *in forma pauperis, see Lucy v. Johnston,* CA 14-0185-CG-B, Docs. 11-22. Unsurprisingly, Judge Johnston had no knowledge of Lucy's federal lawsuit until January 2, 2015 (as same had never been served) (*see* T.T. 11-13) and since that federal lawsuit never proceeded beyond the filing fee stage, the undersigned finds no merit to Lucy's conclusory suggestion that Johnston had a conflict of interest requiring recusal. *Cf. United States v. Leitner,* 2018 WL 4905952, *11 (N.D. Fla. July 11, 2018) ("Judges are not required to recuse themselves merely because they are named as defendants in a meritless lawsuit."), *report and recommendation adopted,* 2018 WL 4904943 (N.D. Fla. Oct. 9, 2018).

Lucy to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citation omitted). Lucy simply has not come forward with any new reliable evidence that establishes his actual factual innocence of offering a false instrument for recording against a public servant. Indeed, Lucy merely attacks the "intent to harass" element of the charged offense[19] and contends that the State failed to prove this element because

---

[19]    Petitioner also gives significant ink to what appears to be his firmly-held belief that the Mobile County Circuit Court had a duty to enter a default judgment in the amount of $42 million dollars in his favor and against the counterclaim defendants in CV-2011-0852, as opposed (just) to entering default on the docket on December 7, 2011. (*See, e.g.,* Doc. 27, at 5.) And while the undersigned holds no (corresponding) firm belief that he can convince the Petitioner that he is wrong in this regard, he is most assuredly wrong and this is why. Rule 55(a) of the Alabama Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief has failed to plead or otherwise defend as provided by these Rules and that fact is made to appear by affidavit *or* otherwise, the clerk shall enter the party's default." *Id.* (emphasis supplied). This is what happened in the instant case, the Clerk of Court making entries of default on December 7, 2011. And, of course, as made clear in Judge Robert Smith's October 15, 2012 Order, the entries against all counterclaim defendants were for naught and, certainly, against Robin Cox, Gordon House and House & Morgan LLP, this was because they had not been added as counterclaim defendants by the court (*see* T.T. 166-71). Rule 55(b)(1) of the Alabama Rules of Civil Procedure goes on to provide that "[w]hen the plaintiff's claim against (Continued)

the evidence showed that he served the Circuit Court Clerk with advance notice of his

plan to file the lien and that when the lien was filed he filed a "Right to Cure" document

---

a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and if the defendant is not a minor or incompetent person." *Id.* This is what did not happen but what Lucy contends should have happened, apparently as early as December 7, 2011. However, Petitioner is wrong that the Clerk was in the position to enter a default judgment in this regard on or around December 7, 2011, and this is because the rule provides for a two-step process, first entry of default and, then, upon further application, entry of default judgment, *see, e.g., J & P Constr. Co. v. Valta Constr. Co.,* 452 So.2d 857, 859 (Ala. 1984) ("The procedure for granting a default judgment is set out in Rule 55. The first step is the entry of a default. . . . A judgment by default may then be entered. If the claim is for a sum certain or for a sum which can by computation be made certain, the clerk may enter the judgment upon a request and an affidavit of the amount due. [] In all other cases[,] entry of a default judgment must be made by the court on application of the party entitled to the default."), and Lucy simply has never established (and cannot establish) that he made the proper further application, supported by affidavit of the amount due, in a case appropriately dealt with in accordance with Rule 55(b)(1) (*see* Exhibits A-D, Attached Hereto), *compare J & P Constr. Co., supra,* at 859-60 ("Examples of cases which are properly treated as claims for amounts which are certain or are capable of being made certain by computation include such claims as actions based on life insurance policies, actions for the recovery of deposits, actions for the face amounts of notes, and claims based on other liquidated sums. . . . Although this is a contract dispute, the claim is not for the face amount of the contract, nor is it based on a liquidated damages clause in the agreement.") *with Neal v. American Tel. & Tel. Co.,* 454 So.2d 975, 976 & 977 (Ala. 1984) (in a case where the plaintiff amended his complaint "seeking recovery of damages for extraordinary deprivations which allegedly resulted from the disconnection of his telephone service[,]" the Alabama Supreme Court found plaintiff relegated to Rule 55(b)(2) for entry of default judgment, given that plaintiff's claimed damages in his amended complaint were speculative such that his application for default could not conceivably constitute a "sum certain."), *cert. denied,* 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985). In addition, to the extent Lucy sought a default judgment on his counterclaim, it is clear the Clerk could not enter such default judgment because his application for judgment would have been in a case in which Steve Cox had assuredly appeared in order to evict or eject Lucy from 413 Chin Street and where the other individuals and entity against whom Lucy wanted a default judgment had not been added as defendants by the court (*see* T.T. 166-71 (Judge Smith's Order)); rather, all of the foregoing circumstances required entry of default judgment by the trial court, in accordance with Ala.R.Civ.P. 55(b)(2) ("If the ***party*** against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for default at least three (3) days prior to the hearing on such application, provided, however, that judgment by default may be entered by the court on the day the case is set for trial without such three (3) days['] notice."), not by the Clerk.

containing the explanation that she had the power to remove the lien by performing her

duty and entering a $42 million dollar default judgment on his counterclaim in CV-2011-

0852 (Doc. 27, at 6);[20] however, this, in effect, was Petitioner's defense at trial, and

---

[20] And while the undersigned has discussed at some length why the Clerk of Court was not in a position to enter a default judgment in CV-2011-0852 on or near the date upon which the entries of default were entered on the docket on December 7, 2011, *see* Footnote 19, *supra,* the foregoing discussion matters not one whit with respect to Lucy's criminal conviction. Instead, what is of import with respect to Petitioner's conviction for offering a false instrument for recording against a public servant is the actions Lucy took in October through December of 2012. As clearly reflected above, on October 15, 2012, Mobile County Circuit Judge Robert Smith entered an order setting aside the entries of default (by the Clerk on December 7, 2011) and holding them for naught (in part because the court had not allowed the adding as counter-defendants of Robin Cox, Gordon House, and House & Morgan LLP), *see McConico v. Correctional Medical Servs., Inc.,* 41 So.3d 8, 12 (Ala.Civ.App. 2009) ("Because the '[e]ntry of default pursuant to Rule 55(a) is not equivalent to the entry of default judgment under Rule 55(b),' *McBride v. McBride,* 380 So.2d 886, 889 (Ala.Civ.App. 1980), a trial court's decision to set aside an entry of default is not equivalent to a decision to set aside a default judgment. . . . In fact, because an entry of default is no more than an interlocutory order, it is not a final judgment, and relief from such an order is available under Rule 55(c) regardless of when the request is made."), and dismissing Lucy's counterclaim against Steven J. Cox with prejudice by granting Cox's motion for summary judgment on the basis that the matter sought to be litigated by Lucy in his counterclaim filed in the ejectment action, CV 11-0852, that is, the piece of property at 413 Chin Street in Mobile, Alabama, had already been adjudicated in the Circuit Court of Mobile County, Alabama and the Alabama Court of Civil Appeals (*compare* T.T. 166-71 *with* State's Exhibit 7). Despite the contents of this Order, an Order which Lucy admitted receiving during the proceeding in Probate Court (*see* T.T. 179-82), Petitioner served on the Circuit Clerk, on October 22, 2012, among other documents, a Notice of First and Final Warning wherein he advised Schwarzauer that if she did not exercise her duty to enter default judgment in his favor and against the counter-defendants in CV-2011-0852 in the amount of $42 million or otherwise show legal reasons for her inability to do so, he would record a commercial lien against her in Mobile County Probate Court in the stated amount of $42 million (*see* Doc. 20, T.T. 141-43). And when Schwarzauer ignored Lucy's paperwork, Petitioner recorded in the Mobile County Probate Court both that First and Final Warning (with attached documents) as well as the Commercial Lien (with attached documents). (*See* T.T. 139.) Petitioner now claims that the State failed to prove intent to harass or intimidate because he extended to Schwarzauer a "Right to Cure." And while this certainly was Lucy's testimony (*see* T.T. 206-07) and the Petitioner made this argument to the jury (*see, e.g.,* T.T. 228-30 & 233), the jury found against him on this "defense" by returning a guilty verdict (T.T. 263). And this Court, on habeas review, cannot grant any petitioner, much less Lucy, relief based on an argument obviously rejected by the jury without being offered some new, material evidence establishing innocence and not considered by that same jury (which Lucy does not offer). Moreover, Lucy's argument is wholly devoid of merit given that Petitioner himself was well aware before he recorded the documents in Mobile County Probate Court on December 19, 2012 that there was no legal basis upon which the Circuit Clerk could enter a default judgment in Lucy's favor in CV-2011-0852 because Judge Smith had set aside the entries of
(Continued)

certainly his argument (albeit unsuccessful) to the jury (*see* T.T. 263). Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

**B.** **Certificate of Appealability.** Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). The instant habeas petition is being denied on procedural grounds without reaching the merits of purported constitutional claims, such that "a COA should issue [only] when the prisoner shows . . .

---

default and had entered judgment against Lucy on his counterclaim. In other words, the viability of any counterclaim Lucy had against Steven Cox terminated/ended on October 15, 2012, when Judge Smith entered judgment against Lucy on his counterclaim, and given Lucy's knowledge of the contents of that Order, he would have understood the legal futility of advising Schwarzauer that she could "cure" her damage to him (in the amount of $42 million) by entering a $42 million default judgment against the counter-defendants in CV-2011-0852 (*see* T.T. 142). Given Lucy's knowledge, it is clear to the undersigned, as it was the jury, that Petitioner's intent in recording the Commercial Lien and First and Final Warning in Mobile County Probate Court (and associated documents) on December 19, 2012, which documents contained the false information that he had a $42 million judgment against Schwarzauer (when he, in fact, had no judgment against anyone), was to harass and intimidate Schwarzauer and cause the Mobile County Circuit Clerk personal hardship in connection with her personal property and future contractual relationships.

that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). Petitioner has defaulted all of his asserted claims without fairly presenting (and exhausting) them to the Alabama Supreme Court and that court would now find the claims procedurally barred, *compare McNair, supra,* 416 F.3d at 1302 & 1305 *with Kelley, supra,* 377 F.3d at 1344 & 1351; thus, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Lucy should be allowed to proceed further, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, petitioner is not entitled to a certificate of appealability as to any of the claims he has raised in his habeas corpus petition.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v.*

*DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that William N. Lucy is not entitled to federal habeas corpus relief, pursuant to 28 U.S.C. § 2254, because he has procedurally defaulted all his claims due to his failure to exhaust his state remedies and fairly present his constitutional claims to Alabama's Supreme Court. Therefore, his habeas corpus petition (Doc. 12) should be **DENIED/DISMISSED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis.*

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection

38

must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

  **DONE** this the 2nd day of November, 2018.

     s/P. BRADLEY MURRAY
     **UNITED STATES MAGISTRATE JUDGE**